UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                                    Chapter 11

Patsy Fierro,                                                          Case No. 14-41439-nhl

                      Debtor.
------------------------------------------------------------X
Patsy Fierro and Denise Zucaro,
as Executor of the Estate of Luigi Zucaro a/k/a
Louis Zucaro,
                      Plaintiffs.

v.

Richard L. Yellen,                                                Adv. Pro. No.: 18-01048-nhl
Brendan Kombol,
Richard L. Yellen & Associates LLP,
Monica Kipiniak, and
Gale Elston,

                      Defendants.
------------------------------------------------------------X

## <u>DECISION AND ORDER ON MOTION TO DISMISS</u>

**<u>Appearances:</u>**

Douglas J. Pick                    Steven R. Schoenfeld
Pick & Zabicki LLP             DelBello Donnellan Weingarten
369 Lexington Avenue          Wise & Wiederkehr LLP
12th Floor                         One North Lexington Ave
New York, NY 10017           11th Floor
                               White Plains, NY 10601
Jay H. Berg                     *Attorneys for Defendants*
Cornicello Tendler & Baumel-Cornicello
Two Wall Street
20th Floor
New York, NY 10005
*Attorneys for Plaintiffs*

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

Plaintiffs Patsy Fierro ("Fierro"), an individual chapter 11 debtor, and Denise Zucaro, acting as the Executor of the Estate of Luigi Zucaro a/k/a Louis Zucaro ("Zucaro"), initially an individual chapter 11 debtor but now deceased, (together, the "Plaintiffs"), each commenced an adversary proceeding (Adv. Pro. Nos. 18-01048-nhl and 18-01049-nhl (together, the "Adversary Proceedings")) against Richard L. Yellen, Esq. ("Yellen"), Brendan Kombol, Esq. ("Kombol"), Richard L. Yellen & Associates LLP ("Yellen & Associates"), Monika Kipiniak, Esq. ("Kipiniak"), and Gale Elston, Esq. ("Elston") (collectively, the "Defendants"), seeking (i) sanctions for alleged violations of New York Judiciary Law § 487 ("Section 487"), (ii) sanctions pursuant to this Court's inherent power, and (iii) sanctions pursuant to 28 U.S.C. § 1927.[1] At various points, each of the Defendants represented J.C. Ryan EBCO/H&G, LLC ("J.C. Ryan") in state court proceedings or later before this Court. The Defendants filed a motion to dismiss (the "Motion to Dismiss") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[2]

For the reasons set forth below, the Motion to Dismiss is granted with respect to the Section 487 claim as to all Defendants. Further, the Plaintiffs have failed to state a claim against Kipiniak and Elston with respect to this Court's inherent power to sanction or pursuant to 28 U.S.C. § 1927 and those causes of action are dismissed. Likewise, the Plaintiffs have failed to state a claim against Yellen, Yellen & Associates, and Kombol (the "State-Court Counsel Defendants") based on those same grounds. However, for the reasons set forth below, the Court chooses to dismiss these causes of action as to the State-Court Counsel Defendants *without prejudice*, to permit the Plaintiffs to

---

[1] The Adversary Proceedings are based on the same set of facts and allegations, and the complaints (together, the "Complaint") and parties are identical. *See* Adversary Proceedings, ECF Nos. 1 (hereinafter and collectively referred to as "Compl.").

[2] *See* Adv. Pro. Nos. 18-01048-nhl, ECF No. 14; Adv. Pro. No. 18-01049-nhl, ECF No. 14.

amend the Complaint (i) to include an independent cause of action for fraud, and (ii) to plead facts with greater specificity, connecting the State-Court Counsel Defendants to the filing of the Proofs of Claim (as defined herein) and/or other bankruptcy-specific acts taken before this Court.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by Order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## BACKGROUND

The Complaint's allegations stem from the turbulent business relationship between general contractor Cyber-Struct, Inc. ("Cyber-Struct"), project owner Dean Boerum Owners, Inc. ("DBO"), and subcontractor J.C. Ryan. The Plaintiffs are seeking to sanction the Defendants in connection with a purported scheme in which J.C. Ryan allegedly obtained a fraudulent default judgment against Cyber-Struct and the Plaintiffs in New York state court, and thereafter attempted to collect said judgment through the Plaintiffs' bankruptcy cases.

### I. General Background

In August of 2000, Cyber-Struct, whose principals were Fierro and Zucaro, entered into a Standard Form of Agreement with DBO, whose president was Philip Mendlow ("Mendlow"), for the purpose of constructing an apartment building in Brooklyn (the "Project"). Compl. ¶ 15. According to the Plaintiffs, the principals of Cyber-Struct and DBO were unable to get along, which resulted in the parties terminating their relationship in April of 2002 and DBO retaining Yellen as counsel. *Id.* ¶¶ 17–18.

3

Also in April of 2002, Cyber-Struct, DBO, and Bay Ridge Mechanical Corp—another party working on the Project—allegedly held a meeting where Cyber-Struct provided Mendlow with a spreadsheet (the "Spreadsheet") reflecting that Cyber-Struct owed approximately $353,566.93 to nineteen subcontractors, suppliers, and/or vendors in connection with the Project, including $68,700.00 owed to subcontractor J.C. Ryan (the "Project Claims"). *Id*. ¶¶ 19–21, 26. The Plaintiffs assert that the Spreadsheet did not reflect any misappropriation of trust fund monies by Fierro or Zucaro. *Id*. ¶¶ 27–28.

Thereafter, Yellen, as counsel to DBO, allegedly devised a strategy to acquire the Project Claims reflected on the Spreadsheet "for the specific purpose of commencing a class action lawsuit under Article 3-A of the New York Lien Law against Patsy Fierro and Louis Zucaro personally, to get money to DBO." *Id*. ¶ 30. In furtherance of this scheme, DBO allegedly began purchasing the Project Claims from the subcontractors, vendors and/or suppliers, executing eight assignments in favor of DBO between May 2, 2002 and June 21, 2002 (the "2002 Assignments"). *Id*. ¶¶ 32–35. With respect to J.C. Ryan's Project Claim, on May 2, 2002, Mendlow allegedly sent a facsimile to J.C. Ryan with a proposed agreement whereby DBO would purchase J.C. Ryan's claim for an initial amount of $20,000.00, and such additional amounts as authorized by Mendlow (the "J.C. Ryan Assignment"). *Id*. ¶ 40. The J.C. Ryan Assignment was allegedly signed and returned to DBO the same day, and over the course of approximately three weeks, J.C. Ryan charged $29,000.00 to Mendlow's credit card, all of which was applied to reduce the debt owed by Cyber-Struct to J.C. Ryan. *Id*. ¶¶ 40–45.

After consummation of the J.C. Ryan Assignment, J.C. Ryan and DBO allegedly had a disagreement about amounts owed thereunder. *Id*. ¶¶ 48–58. Specifically, the Plaintiffs allege that J.C. Ryan claimed it was owed an additional $42,598.00 from Cyber-Struct, and demanded this

money from DBO in accordance with the J.C. Ryan Assignment. *Id*. ¶¶ 48–49. J.C. Ryan then purportedly hired a collection specialist and filed a mechanic's lien on DBO's property. *Id*. ¶¶ 48–51. Yellen, who was still counsel to DBO at this time, attempted to ameliorate the situation by delivering a $10,000.00 check, which payment had been deposited into Yellen's attorney escrow account by DBO, to J.C. Ryan's collection specialist, representing "DBO's settlement of the mechanic's lien" along with a letter that purportedly included a blueprint for a class-action lawsuit against Cyber-Struct (the "Letter Agreement"). *Id*. ¶¶ 57–58.

Specifically, the Letter Agreement, as summarized by the Plaintiffs in the Complaint, stated that "(a) in exchange for the $10,000 payment [from DBO] . . . J.C. Ryan would act as a class representative on behalf of itself and other subcontractors similarly situated against Cyber-Struct, Mr. Zucaro, and Mr. Fierro; (b) DBO would incur all costs and expenses of the class action litigation; and (c) the first $10,000 recovered from the class action litigation would be paid to DBO as reimbursement of the $10,000 paid by DBO to J.C. Ryan." *Id.* ¶¶ 58, 60. The Letter Agreement also provided that J.C. Ryan would retain Yellen as its attorney to prepare and file the complaint. *Id.* ¶ 60.

The Plaintiffs contend that the language in the Letter Agreement evidences J.C. Ryan's release of its Project Claims against Cyber-Struct, Fierro, and Zucaro because the agreement instructed the collection specialist to "sign and return [the Letter Agreement] with the original of the release of the mechanic's lien *and general release*." *Id*. ¶ 60. In accordance with the Letter Agreement, on March 13, 2003, J.C. Ryan allegedly executed a general release in favor of DBO, which the Plaintiffs contend "waived and/or released any claim [J.C. Ryan] had against Cyber-Struct, Louis Zucaro and/or Patsy Fierro." *Id.* ¶¶ 64–65.

Thus, the Plaintiffs allege that although J.C. Ryan and various other subcontractors and suppliers no longer held Project Claims against Cyber-Struct as a result of the 2002 Assignments and the general release, these parties were to become *faux* class members in a lawsuit to collect money on the Project Claims. *Id.* ¶¶ 58–64. The Plaintiffs assert that this fraudulent scheme was intended and constructed to create the appearance that J.C. Ryan could present a *bona fide* class action to the New York state court that, in reality, was designed to solely benefit DBO and its counsel, Yellen & Associates. *See id*. ¶ 14.

## II. Prepetition State Court Action[3]

On May 19, 2003, J.C. Ryan, through its counsel Yellen, filed a class-action complaint (the "State Court Action") with the Supreme Court of the State of New York, County of Kings (the "State Court") against Cyber-Struct, Fierro, Zucaro, and Damon Coromilas (the "State Court Defendants"). *See* Declaration of Steven Schoenfeld, Case No. 14-41439-nhl, ECF No. 330 and Case No. 14-41440-nhl, ECF No. 277 (hereinafter "Schoenfeld Decl."), Ex. 1; Compl. ¶ 82. The class-action complaint was brought under New York's Lien Law, alleging that the State Court Defendants wrongfully diverted funds from the Project, and failed to pay various suppliers and subcontractors in full. *See* Schoenfeld Decl. Ex. 1. The Plaintiffs assert that the so-called class members were not notified of the State Court Action, and that Yellen & Associates did not disclose in the complaint, or thereafter, the 2002 Assignments or Yellen & Associates' simultaneous representation of J.C. Ryan, Mendlow, and DBO. Compl. ¶¶ 69–70, 76–79, 87, 91.

---

[3] The Court takes judicial notice of the state court filings, decisions, and orders, many of which were attached to the Declaration of Steven Schoenfeld, Case No. 14-41439-nhl, ECF No. 330, which was filed as a declaration to Kipiniak's response to the motion for sanctions and cited in the Motion to Dismiss. Motion to Dismiss, Adv. Pro. Nos. 18-01048-nhl, ECF No. 14 at 4; Motion. to Dismiss, Adv. Pro. No. 18-01049-nhl, ECF No. 14 at 4.

The State Court Defendants appeared and litigated for approximately two years. *See* Schoenfeld Decl. Ex. 2, Ex. 3, Ex. 4. In 2003, the State Court Defendants filed a motion for summary judgment seeking to dismiss J.C. Ryan's complaint, which was denied. *See* Schoenfeld Decl. Ex. 4. Thereafter, in 2006, J.C. Ryan moved for summary judgment, and the State Court Defendants failed to respond. As a result, on May 12, 2008, the State Court issued a default judgment in the amount of $619,289.92 (the "Default Judgment"), allegedly mirroring amounts reflected in the Spreadsheet shared with DBO in 2002. Compl. ¶¶ 88–91. The Plaintiffs allege that the Default Judgment was supported solely by the affidavits of J.C. Ryan and DBO. *Id.* ¶ 91.

In February 2013, the State Court Defendants sought to vacate the Default Judgment, which request was denied on September 20, 2013. Schoenfeld Decl. Ex. 16, Ex. 17. A second attempt to vacate the Default Judgment was denied on February 28, 2014. *Id.* Ex. 22.

### III. <u>The Fierro and Zucaro Bankruptcies and Postpetition State Court Action</u>

On March 27, 2014, Fierro and Zucaro (the "Debtors") each filed voluntary chapter 11 petitions[4], and removed the State Court Action to this Court which created two related adversary proceedings (the "14-01068 and 14-01087 Adversary Proceedings").[5] Compl. ¶ 100.  On May 12, 2014, J.C. Ryan filed an individual proof of claim in each of the bankruptcy cases based on the Default Judgment, which totaled, with interest, $946,584.59 (the "Proofs of Claim"). *Id.* ¶¶ 103–05. The Proofs of Claim were filed by J.C. Ryan's initial bankruptcy counsel, Samantha Litt, Esq.

---

[4] The Court takes judicial notice of the filings in the Debtors' bankruptcy cases. Case No. 14-41439-nhl; Case No. 14-41440-nhl.

[5] *J.C. Ryan EBCO/H&G LLC, on behalf of itself and all other subcontractors similarly situated v. Cyber-Struct Inc., Louis Zucaro, aka Lou Zucaro, aka Louie Zuccaro, Patrick Fierro, aka Patsy Fierro, aka Pat Fierro, Damon Coromilas,* Adv. Pro. No. 14-01068-nhl (Bankr. E.D.N.Y. May 1, 2014); *J.C. Ryan EBCO/H&G LLC, on behalf of itself and all other subcontractors similarly situated v. Cyber-Struct Inc., Louis Zuccaro,  aka  Lou Zuccaro,  aka Louie Zuccaro, Patrick Fierro, aka Patsy Fierro, aka Pat Fierro,  Damon Coromilas,* Adv. Pro. No. 14-01087-nhl (Bankr. E.D.N.Y. June 6, 2014).

of the Law Offices of Bernard D'Orazio & Associates, P.C.[6] On September 24, 2014, the Debtors objected to the Proofs of Claim on the theory that they were based on the Default Judgment allegedly procured through fraud. *See* Claim Obj., Case No. 14-41439-nhl, ECF No. 49; Claim Obj., Case No. 14-41440-nhl, ECF No. 46.

Thereafter, on October 31, 2014, A. Scott Madelup, Esq. of Pryor & Madelup LLP, who had been substituted as bankruptcy counsel to J.C. Ryan a few weeks prior,[7] commenced adversary proceedings in each of the bankruptcy cases by filing complaints objecting to the dischargeability of J.C. Ryan's debt pursuant to 11 U.S.C § 523(a)(4) (the "Non- Dischargeability Actions"). *See* Complaint, Adv. Pro. No. 14-1142-nhl, ECF No. 1; Complaint, Adv. Pro. No. 14-1143-nhl, ECF No. 1.

On May 29, 2015, this Court entered an order in each of the Debtor's bankruptcy cases (i) abstaining from hearing the State Court Action under the doctrine of permissive abstention, (ii) remanding the State Court Action and (iii) lifting the automatic stay to the extent necessary for the Plaintiffs to prosecute and J.C. Ryan to defend a pending motion in the State Court to vacate the Default Judgment (the "Remand and Stay Relief Order"). *See* Remand Order, Case No. 14-41439-nhl, ECF No. 107; Remand Order, Case No. 14-41440-nhl, ECF No. 96.

On September 8, 2015, by Order of this Court, Pryor & Mandelup L.L.P. withdrew as counsel to J.C. Ryan, and Kipiniak was substituted. *See* Withdrawal Order, Case No. 14-41439-nhl, ECF No. 134; Withdrawal Order, Case No. 14-41440-nhl, ECF No. 116. On September 24, 2015, within days of Kipiniak's retention, the State Court rendered another decision yet again

---

[6] Yellen & Associates nominally served as counsel to J.C. Ryan in the bankruptcy cases until on or about July 22, 2015. The Plaintiffs filed motions in each of the Debtor's bankruptcy cases seeking to disqualify Yellen & Associates as counsel to J.C. Ryan in any capacity. *See* Case No. 14-41439-nhl, ECF No. 116; Case No. 14-41440-nhl, ECF. No. 102. However, at the hearing held on the matter, Yellen stated that his firm would voluntarily step down and, as such, the Court marked the motions to disqualify as settled. Hrg Tr., 7/22/15, 20:15-20, 30:20-21.
[7] Pryor & Madelup LLP was substituted as counsel by Order dated October 6, 2014. Case No. 14-41439-nhl, ECF No. 64; Case No. 14-41440-nhl, ECF No. 56.

denying the Plaintiffs' motion to vacate the Default Judgment, and specifically found that the "motion to vacate the judgment pursuant to CPLR 5015 based upon fraud is also denied." Schoenfeld Decl. Ex. 20.

Kipiniak continued to act as lead counsel until on or about October 19, 2016,[8] during which time she attended several court hearings, participated in discovery, and filed papers opposing Fierro's motion for summary judgment to expunge the Proof of Claim filed in his case. *See* Opp. to Motion to Summary Judgmt, No. 14-41439-nhl, ECF No. 254. On November 16, 2015, the Plaintiffs, wishing to seek sanctions against Kipiniak under Rule 9011, served Kipiniak with a letter demanding that she withdraw the Non-Dischargeability Actions and the Proofs of Claim. Compl. Ex. A. She did not.

In early 2016, Elston also made a brief appearance on behalf of J.C. Ryan. Specifically, on January 29, 2016, Elston briefly appeared as counsel to J.C. Ryan at an examination of Damon Coromilas, a non-party witness and named defendant in the State Court Action, regarding the alleged fraud that occurred in State Court. Compl. ¶ 137–45.

After the Court lifted the automatic stay to allow the Plaintiffs and J.C. Ryan to continue litigating in State Court, the Plaintiffs again moved to vacate the Default Judgment. This time they were successful. On October 31, 2016, Justice Baynes of the State Court issued a short form order (i) vacating the Default Judgment and (ii) reserving decision on the motion to disqualify Yellen & Associates. *Id.* ¶ 146. Thereafter, on November 29, 2016, Justice Baynes signed a decision and order granting the Plaintiffs' motion to disqualify Yellen & Associates. *Id.* ¶ 147. On December

---

[8] Although Kipiniak stepped down as lead counsel at this time, she never filed a notice of withdrawal. On October 19, 2016, DelBello Donnellan Weingarten Wise & Wiederkehr LLP filed a notice of appearance stating the firm was appearing as co-counsel with Kipiniak. The firm has appeared at all hearings since the filing of this notice, and took over as lead counsel for J.C. Ryan in the bankruptcy cases and adversary proceedings, although Kipiniak appeared, but did not argue, at hearings on October 20, 2016 and November 4, 2016.

14, 2016, the State Court issued an order vacating and recalling the Default Judgment. *Id.* ¶ 148. While the basis of the order vacating the Default Judgment is unclear, the State Court did not vacate the judgment based on fraud; rather, the order provides that "at the time the [D]efault Judgment was entered as to the Moving Defendants, there was a statutory bankruptcy stay in effect and had the Court (Lewis, J) been aware of that stay, it would not have granted the default Judgment." Schoenfeld Decl. Ex. 47. On December 14, 2017, the State Court modified the December 14, 2016 order by deleting the reference to the statutory bankruptcy stay, but left the order vacating the judgment in place. *Id.* Ex. 48. Also on December 14, 2017, the State Court entered a short form order vacating the order certifying the class of alleged creditors. Compl. ¶ 149.

Thereafter, on March 8, 2018, the State Court issued a short form order granting the Plaintiffs' motion to amend their answer to assert a counterclaim for abuse of process but denied without prejudice their motion to assert a counterclaim for fraud. Schoenfeld Decl. Ex. 53; Compl. ¶ 150; Schoenfeld Decl. Ex. 53. On December 12, 2018, the State Court (i) granted J.C. Ryan's motion to dismiss the counterclaim for abuse of process, and (ii) denied a motion by the Plaintiffs to renew and reargue their motion to assert a counterclaim for fraud. *See* Letter to Hon. Nancy H. Lord, Case No. 14-41439-nhl, ECF No. 360; Letter to Hon. Nancy H. Lord, Case No. 14-41440-nhl, ECF No. 306.

On July 11, 2018, DelBello Donnellan Weingarten Wise & Wiederkehr LLP ("DelBello"), who had taken over as lead bankruptcy counsel to J.C. Ryan, filed a notice to dismiss the Non-Dischargeability Actions. Notice to Dismiss, Adv. Pro. No. 14-1142-nhl, ECF No. 45; Notice to Dismiss, Adv. Pro No. 14-1143-nhl, ECF No. 58. The Non-Dischargeability Actions were closed on July 18, 2018.

Also on July 11, 2018, DelBello filed a motion to withdraw J.C. Ryan's Proofs of Claim on a provisional basis. Motion to Withdraw, Case No. 14-41439-nhl, ECF No. 327; Motion to Withdraw, Case No. 14-41440-nhl, ECF No. 273. On September 28, 2018, this Court entered an order expunging the Proofs of Claim, but declared that if the vacated Default Judgment was ultimately reinstated by a final order, J.C. Ryan could move to reinstate the Proofs of Claim. Order Expunging Proof of Claim, Case No. 14-41439-nhl, ECF No. 344; Order Expunging Proof of Claim, Case No. 14-41440-nhl, ECF No. 291.

J.C. Ryan filed several appeals in the State Court, Appellate Division, seeking to reverse the state court decisions (i) vacating the Default Judgment, (ii) disqualifying Yellen & Associates, (iii) de-certifying the class of alleged creditors, and (iv) correcting the text of the December 14, 2016 Order. Case No. 14-41439-nhl, ECF No. 379; Case No. 14-41440-nhl, ECF No. 320 (hereinafter "Letter of Chronology of State Court Filings and Appeals"). These four appeals, which were combined under one record of appeal, have been fully briefed and marked submitted in the Appellate Division (the "State Court Appeals"). *See* Hrg. Tr. 2/25/20, 17:5-10.

However, in July 2019, after J.C. Ryan failed to comply with orders from the State Court that it file a Notice of Issue, the Plaintiffs filed a motion to dismiss the State Court Action. *See* Letter of Chronology of State Court Filings and Appeals. Oral argument on the motion to dismiss was held on January 22, 2020, which resulted in the State Court entering a stipulated short form order dismissing the State Court Action with prejudice. *See id.*

Shortly thereafter, the Plaintiffs filed a motion to dismiss the State Court Appeals, contending that the dismissal of the State Court Action with prejudice renders the State Court Appeals moot. *See* Hrg. Tr. 2/25/20, 9:22-24, 17:5-10. On February 18, 2020, the motion was marked submitted in the Appellate Division. *See* Hrg. Tr. 2/25/20, 9:22-24, 17:5-10.

## DISCUSSION

### I.      Motion to Dismiss Standard

Under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012,[9] a plaintiff must plead

sufficient facts that, when "accepted as true, [] state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must allege enough facts to

"nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, the plausibility standard "asks for more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely

consistent' with a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.*   (quoting *Twombly*, 550 U.S. at 557). For purposes of

reviewing a motion to dismiss for failure to state a claim, the Court accepts factual allegations in

a complaint as true and draws all reasonable inferences in favor of the non-movant. *Roth v.

Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

When ruling on a motion pursuant to Rule 12(b)(6), the Court may consider the complaint,

documents attached to the complaint, documents incorporated into the complaint by reference, and

matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d

Cir. 1991).

---

[9] "Rule 12(b)–(i) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bankr. P. 7012.

II.    **The Causes of Action**

A.    *Section 487*

In their first cause of action, the Plaintiffs allege that the Defendants violated Section 487 by engaging in deceitful conduct when representing J.C. Ryan in the State Court Action and later before this Court. According to the Plaintiffs, the Defendants failed to "disclose[] or acknowledge[] the existence of any 2002 Assignments made to DBO in any document that J.C. Ryan filed with the [State Court]." Compl. ¶ 34. The Plaintiffs allege that the Defendants engaged in "deceit and/or collusion by, among other things, obtaining and thereafter attempting to collect on a fraudulently obtained Default Judgment." *Id*. ¶ 154. The Defendants seek dismissal, *inter alia*, on the basis that "[t]he remedy for a violation of [Section 487] based on an attorney's conduct in litigation lies exclusively in the lawsuit where the attorney's conduct occurred, and not a second plenary action in a different court." Motion to Dismiss, Adv. Pro. Nos. 18-01048-nhl, ECF No. 14 at 8; Motion to Dismiss, Adv. Pro. No. 18-01049-nhl, ECF No. 14 at 8.

Section 487 provides:

An attorney or counselor who:

> 1.   Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
> 2.   Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Jud. Law § 487.

The purpose of Section 487 is to allow New York courts to supervise the conduct of attorneys admitted before their bar. As such, most courts have found that "[t]he reach of Section

487 extends only to misconduct by attorneys in connection with proceedings ***before New York***

***courts***." *All. Network, LLC v. Sidley Austin LLP*, 987 N.Y.S.2d 794, 807 (N.Y. Sup. Ct. 2014)

(emphasis added) (citing *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978)). For example,

in *In re Linder v. Am. Express Corp*., the District Court for the Southern District of New York

dismissed a Section 487 claim because the alleged deceitful conduct occurred in an ongoing federal

action, rather than in state court. No. 06 Civ. 3834(JGK)(THK), 2009 WL 54493 (S.D.N.Y. Jan.

8, 2009). The court explained that "[t]his statute does not provide a basis for sanctioning a party

or attorney for misconduct in an ongoing federal action. Rather, it allows for a state law claim for

conduct that occurred in a prior state court action." *Id*. at *1; *see also Kaye Scholer LLP v. Cna*

*Holdings, Inc.,* No. 08 civ. 5547 (NRB), 2010 U.S. Dist. LEXIS 43194 (S.D.N.Y. Apr. 28, 2010)

(dismissing a Section 487 claim on the basis that the conduct did not occur before a New York

state court).

Moreover, numerous courts have held that "a parties' remedy for a violation of Section

487 stemming from an attorney's actions in a litigation 'lies exclusively in that lawsuit itself, . . .

not a second plenary action.'" *All. Network, LLC*, 987 N.Y.S.2d at 802 (quoting *Yalkowsky v.*

*Century Apartments Assoc.*, 215 A.D.2d 214, 626 N.Y.S.2d 181 (1st Dep't 1995)); *In re Swift*, No.

94–10285–CEC, 2016 WL 355515, at *5–6 (Bankr. E.D.N.Y. Jan. 28, 2016) (Craig, C.J.); *Chibcha*

*Rest., Inc. v. David A. Kaminsky & Assocs., P.C.*, 958 N.Y.S.2d 135, 137 (N.Y. 2013). For

example, this Court recently held in *In re Buckskin* that a plaintiff did not state a claim under

Section 487 where the alleged deceitful conduct occurred during a foreclosure proceeding in New

York state court. *In re Buckskin Realty, Inc.*, No.1-13-40083-nhl, 2016 WL 5360750, at *7 (Bankr.

E.D.N.Y. Sept. 23, 2016) (Lord, J.).

The Plaintiffs reject this limitation, citing to *Canon U.S.A., Inc. v. Divinium Techs. Inc.*, Case No. 15 Civ. 1804 (PAC), 2017 WL 696693 (S.D.N.Y Feb. 21, 2017). Pl.'s Opp'n, Adv. Pro. Nos. 18-01048-nhl, ECF No. 16 at 12; Pl.'s Opp'n, Adv. Pro. No. 18-01049-nhl, ECF ECF No. 16 at 12. In *Canon U.S.A.*, the court permitted the plaintiffs to proceed with their Section 487 claim even though the action was brought in a plenary proceeding because the plaintiffs did "not seek to collaterally attack a prior adverse judgment or order" and sought "to recover lost time value of money and the excess legal expenses incurred in the prior action." *Canon U.S.A.*, 2017 WL 696693, at *4 (internal quotations omitted). However, the *Canon U.S.A.* case is inapposite. Unlike *Canon U.S.A.*, where the prior state court action was dismissed for failure to prosecute, here the State Court Action was open for over sixteen years with ongoing and extensive litigation, thereby providing an adequate opportunity and available forum for the Plaintiffs to assert a Section 487 claim.

Because the Plaintiffs' Section 487 claim is rooted in allegedly deceitful conduct that occurred in the State Court Action, the Plaintiffs "should have sought their remed[y] in the case[] in which the wrongdoing allegedly was committed." *All. Network, LLC*, 987 N.Y.S.2d at 802. And even if the Plaintiffs' claim was rooted in actions before this Court, the Section 487 claim could not be successfully asserted here, as Section 487 extends only to misconduct by attorneys before New York state courts. Thus, the Plaintiffs have failed to meet the *Twombley* standard and plausibly state a claim for relief. Consequently, the Motion to Dismiss the Plaintiffs' Section 487 cause of action is dismissed as to all Defendants.

### B.  *Inherent Power to Sanction*

The Plaintiffs' second cause of action seeks to sanction the Defendants based on this Court's "inherent power." The Court has inherent sanctioning power under 11 U.S.C. § 105

("Section 105"), and an inherent authority "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Plumeri*, 434 B.R. 315, 327–28 (S.D.N.Y. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Plaintiffs also cite Title 22 of the Official Compilation of Codes, Rules and Regulations of the State of New York, § 130–1.1 (hereinafter "22 NYCRR 130-1.1") as a basis for the Court's inherent power to sanction.

Like the Plaintiffs' Section 487 claim, the Plaintiffs allege here that the "Defendants engaged in and are guilty of deceit and/or collusion, or consented to deceit and/or collusion by, among other things, obtaining and thereafter attempting to collect on a fraudulently obtained Default Judgment." Compl. ¶ 162. The Defendants argue that the Court's inherent power to sanction does not provide an independent cause of action and, regardless, the Defendants' actions do not meet the requisite bad faith standard. Motion to Dismiss, Adv. Pro. Nos. 18-01048-nhl, ECF No. 14 at 15–16; Motion to Dismiss, Adv. Pro. No. 18-01049-nhl, ECF No. 14 at 15–16.

Each of the Plaintiffs' sanction theories within their second cause of action will be addressed in turn.

  **i.**  <u>**Section 105**</u>

Under Section 105, a bankruptcy court is permitted to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and to "*sua sponte*, [take] any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105. The Second Circuit has discussed the confines of this provision, stating that, "[t]he equitable power conferred . . . by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the

right thing." *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005) (internal quotations omitted); *see In re Cartisano*, Case No. 8-18-70703-reg, 2019 WL 1028497, at *6 (Bankr. E.D.N.Y. Mar. 4, 2019) (to impose sanctions under section 105 "there must be a specific bankruptcy provision tied to the allegations"). Further, bankruptcy courts are hesitant to sanction under Section 105 when there are alternative remedies available under the Bankruptcy Code. *In re Freeman-Clay*, 578 B.R. 423, 443 (Bankr. W.D. Mo. 2017) ("When the Bankruptcy Code and Rules contain specific remedies for violation of a specific section of the Code or Rules, the Court should not use § 105 to create additional remedies.").

In order to invoke sanctions under Section 105, a court must make a finding of bad faith, which must be clearly evidenced by conduct that is (1) entirely without color and (2) motivated by improper purposes.  *In re Feldman*, 606 B.R 189, 199 (Bankr. E.D.N.Y. 2019).

Here, the Complaint fails to connect a specific bankruptcy provision to the conduct of Defendants Yellen, Yellen & Associates, Kombol, and Elston. As such, the Plaintiffs have failed to meet the Rule 12(b)(6) standard and state a claim under Section 105 with respect to these Defendants.

The Plaintiffs have connected Rule 9011 to the alleged conduct of Kipiniak. As noted, the Plaintiffs sent Kipiniak a letter demanding that she withdraw the Non-Dischargeability Actions and the Proofs of Claim. Compl. Ex. A. The Plaintiffs allege that after receiving the letter, Kipiniak did not investigate the alleged fraud underlying the Non-Dischargeability Actions and Proofs of Claim, and advised Plaintiffs' counsel that she intended to continue her representation of J.C. Ryan. *Id.*  ¶ 133.

Rule 9011, however, provides its own remedies: a court may "impose an appropriate sanction upon the attorneys, law firms, or parties" if a violation under the rule is found. FED. R.

BANK. P. 9011(c). As the parties are well aware, the Plaintiffs have already sought Rule 9011 sanctions against Kipiniak in the main bankruptcy cases. As such, and because Rule 9011 provides an alternative remedy for the alleged sanctionable conduct, this Court will not invoke its inherent power under Section 105. *See In re Freeman-Clay*, 578 B.R. at 443.

Even if Rule 9011 failed to provide an alternative remedy, the Complaint still fails to state a claim under *Twombly* because it is not plausible that Kipiniak's actions meet the bad faith standard. *See In re Feldman*, 606 B.R at 199. The Plaintiffs do not allege that she was involved in the State Court Action or the procurement of the Default Judgment. Importantly, at the time the Plaintiffs requested that Kipiniak withdraw the Non-Dischargeability Actions and the Proofs of Claim, the Default Judgment was still enforceable. Furthermore, shortly after Kipiniak became counsel to J.C. Ryan, the State Court rejected, for a third time, a motion to vacate the Default Judgment, specifically rejecting a vacatur due to fraud. *See* Schoenfeld Decl. Ex. 20. The Plaintiffs have also failed to state any facts tying Kipiniak to the filing of the Proofs of Claim—as noted, Kipiniak became counsel to J.C. Ryan in September 2015, over a year after the Proofs of Claim were filed with this Court. The Plaintiffs' allegations in the Complaint regarding Kipiniak's conduct, accepted as true for the purposes of the Motion to Dismiss, fail to plausibly evidence actions entirely without color and motivated by improper purpose and, as such, the Plaintiffs do not state a claim for sanctions pursuant to this Court's inherent power under Section 105.

### ii.    <u>Inherent Authority to Sanction</u>

In addition to its inherent power under Section 105, this Court has an inherent authority to sanction that is not governed by rule or statute. *See In re Plumeri*, 434 B.R. at 328. As recently held by the Court of Appeals for the Second Circuit, bankruptcy courts, like Article III courts, possess this inherent authority. *In re Sanchez*, 941 F.3d 625, 627–28 (2d Cir. 2019) ([I]nherent

sanctioning powers are . . . inherent in the nature of federal courts as institutions charged with judicial functions.  We therefore hold that bankruptcy courts, like Article III courts, possess inherent sanctioning powers.") (internal citations omitted).

Section 105 and this Court's inherent authority are independent bases for sanctions, and this Court's inherent authority does not require that the sanctionable conduct be tied to a specific bankruptcy provision. *See In re Cartisano*, 2019 WL 1028497, at *5–6; *Geltzer v. Man Kit Ng (In re Man Kit Ng)*, Case No. 11-46867-cec, 2018 WL 3956608, at *2–3 (Bankr. E.D.N.Y. Aug. 14, 2018).

However, sanctions under this Court's inherent authority "should not be imposed lightly." *Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 528 (Bankr. E.D.N.Y. 2013); *see In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010). Like the test under Section 105, to impose sanctions under this Court's inherent authority, there must be "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *In re Green*, 422 B.R. at 474 (quoting *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir.2000) (internal quotations omitted)); *see Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.Supp.2d 458, 472–73 (S.D.N.Y. 2008) ("A claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.") (internal quotations omitted).

a.    *Kipiniak*

As stated above, this Court has found that the Plaintiffs have failed to state a claim pursuant to Rule 12(b)(6) with respect to Kipiniak's alleged actions under Section 105. Because the standard for bad faith conduct is the same under both Section 105 and this Court's inherent authority, the Plaintiffs have also failed to state a claim under this Court's inherent authority to sanction.

Consequently, the Plaintiffs have failed to state a claim against Kipiniak under any of their arguments within the second cause of action. Accordingly, this cause of action is dismissed against Kipiniak.

b. *Elston*

With respect to Elston, the Plaintiffs allege that she created difficulty when conducting the deposition of Coromilas, a named defendant in the State Court Action, by engaging in "contemptuous conduct," such as attempting to represent Coromilas at his deposition despite "obvious conflicts." Compl. ¶¶ 137–45. The Plaintiffs further assert that Coromilas was unhesitant to answer Elston's inquiries, but refused to answer the Plaintiffs' questions, which, they argue, evidences that the parties schemed before the examination. *Id.* ¶ 145. Assuming these allegations to be true, Elston's actions would not be sanctionable by this Court pursuant to its inherent authority because the Plaintiffs have not provided sufficient facts that plausibly evidence bad faith. The conduct described, without more, does not cross the threshold from being a zealous advocate to acting in bad faith. *In re Green*, 422 B.R. at 474; *see In re Khan*, 488 B.R. at 534 ("If the conclusion of bad faith is reached too easily, then the enthusiasm and creativity that is the very lifeblood of the law may be jeopardized.") (internal quotations omitted).

Further, while courts have sanctioned parties for egregious behavior at depositions, such as using vulgar and profane words at opposing counsel and threatening physical violence, s*ee Carroll v. Jaques*, 926 F.Supp. 1282, 1289 (E.D. Tex. 1996), courts have refused to impose sanctions where the conduct is of a lesser degree, such as "lacking in grace and civility." *See In re Man Kit Ng*, 2018 WL 3956608 at *4 (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)). Moreover, the Plaintiffs do not allege that Elston was involved in the State Court

Action or the procurement of the Default Judgment. For these reasons, the Plaintiffs have failed to state a claim under Rule 12(b)(6).

Therefore, the Plaintiffs have failed to state a claim against Elston under any of their arguments within the second cause of action. As such, this cause of action is dismissed against Elston.

### c.   *Yellen, Yellen & Associates, and Kombol*

As noted, the Plaintiffs allege that Defendants Yellen, Yellen & Associates, and Kombol "engaged in and are guilty of deceit and/or collusion by, among other things, obtaining and thereafter attempting to collect on a fraudulently obtained Default Judgment." Compl. ¶ 162. Specifically, the Plaintiffs allege that J.C. Ryan, through Yellen and Yellen & Associates, devised and effectuated a scheme to purchase the Project Claims "for the specific purpose of commencing a class action lawsuit under Article 3-A of the New York Lien Law . . . to get money to DBO," and entered into assignments that were not disclosed in the State Court Action. *Id*. ¶ 30, 76. Moreover, the Plaintiffs allege that Mendlow's deposition evidences that at least seven of the class members "were not entitled to anything," since they had previously assigned their rights to DBO, thereby contradicting Mendlow's state court affidavit, where he swore that all nineteen subcontractors were owed money amounting to $353,566.93. *Id*. ¶¶ 92–94. After obtaining the Default Judgment, the Plaintiffs allege that the State-Court Counsel Defendants attempted to collect on that fraudulently obtained Default Judgment. *Id*. ¶¶ 30, 34, 103–05, 155. This may be an attempt by the Plaintiffs to show that these actors caused the Proofs of Claim to be filed in the Plaintiffs' respective bankruptcy cases. *See id*. ¶¶ 30, 34, 103–05, 155.[10]

---

[10] The Plaintiffs also allege that Kombol and Yellen hid evidence of this scheme when they did not initially produce the Letter Agreement and the general release to bankruptcy counsel when requested in discovery. Compl. ¶¶ 71–72. However, the Plaintiffs filed a motion to compel with respect to producing these documents and, at a hearing held on September 30, 2015, Kombol advised that J.C. Ryan had already, or would immediately after the hearing, produce the

While this Court's inherent power to sanction cannot reach conduct that occurred solely before the State Court, the actions of the State-Court Counsel Defendants may nonetheless be sanctionable under this Court's inherent authority by virtue of the Proofs of Claim. Because the Proofs of Claim are solely a reflection of the Default Judgment, the fraudulent conduct underlying the entry of the Default Judgment, if true, taints the validity of the Proofs of Claim. *See In re Khan*, 488 B.R. at 531 ("[S]anctions are appropriate under a court's inherent power 'where the attorney has acted in bad faith in the actions that ***led to the lawsuit*** or in the conduct of the litigation.'" (emphasis added) (quoting *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001))) .

If the conduct of the State-Court Counsel Defendants caused fraudulent Proofs of Claim to be filed, it may be plausible that their actions had no colorable reason and were in bad faith, since presenting a false proof of claim is a violation of federal law. Specifically, 18 U.S.C. § 152(4) provides, in relevant part, "A person who . . . **(4)** knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity ***or as or through an agent, proxy, or attorney*** . . .  shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 152(4) (emphasis added); *see Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793 (M.D.N.C. 1996) ("[Under 18 U.S.C. § 152(4)] Congress made it a crime to file a false proof of claim."). Courts have used their inherent authority to sanction conduct that possibly violates 18 U.S.C. § 152. *See In re Virginia Mansions Apartments, Inc.*, No. 88–01186 JKF, 1992 WL 391232, at *1, 4 (Bankr. W.D. Pa. Dec. 22, 1992). Thus, if it is ultimately found that the State-Court Counsel Defendants engaged in fraud to obtain a judgment and then attempted to collect on that judgment in the bankruptcy cases, the Defendants' actions may

---

requested papers. Case No. 14-41439-nhl, ECF No. 151; Case No. 14-41440-nhl, ECF No. 102; *see* Hrg Tr. 9/30/15, 67:15-23. As such, the Court will not analyze this conduct with respect to the Plaintiffs' causes of action.

plausibly evidence conduct before this Court without legal or factual basis, and motivated by improper purposes.

The bad faith conduct outlined by the Plaintiffs rests on the assumption that the Default Judgment was procured through fraud. However, the State Court never made a finding based on fraud, the Complaint does not include an independent action for fraud, and the facts presented to the Court are insufficient to connect the State-Court Counsel Defendants to the filing of the Proofs of Claim and/or other improper bankruptcy-specific acts. While the Plaintiffs' current pleading does not pass muster, if the Plaintiffs were able to provide such underlying facts, it may be plausible that the State-Court Counsel Defendants engaged in conduct that this Court has the inherent authority to sanction.

Importantly, it would be within this Court's inherent authority to investigate conduct that resulted in a purported fraudulent judgment which thereafter became the basis of a Proof of Claim. For example, as held by the Supreme Court of the United States, bankruptcy courts "may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated." *Heiser v. Woodruff*, 327 U.S. 726, 732 (1946); *see Kelleran v. Adrijevic*, 825 F.2d 692, 694 (2d. Cir. 1987) ("Bankruptcy courts may look beyond a state court default judgment where the judgment was procured by collusion or fraud . . . ."). Here, the doctrine of *res judicata* will not apply to the State Court Action, and thus the fraud claims thereunder, because under New York law *res judicata* does not apply in instances where default judgments have been vacated. *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001) ("Moreover, the doctrine is applicable to an order or judgment taken by default ***which has not been vacated*** . . . .") (emphasis added) (internal quotations omitted). Here, the Default Judgment was vacated by order dated October 31, 2016.

Moreover, since the filing, prosecution and submission of the Motion to Dismiss, the State Court, on January 22, 2020, signed a stipulated short form order dismissing the State Court Action with prejudice. *See* Dismissal Order, Case No. 14-41439-nhl, ECF No. 379; Dismissal Order, Case No. 14-41440-nhl, ECF No. 320.

Consequently, the Plaintiffs' second cause of action against the State-Court Counsel Defendants is dismissed *without prejudice.* Plaintiffs may amend their Complaint (i) to include an independent cause of action for fraud which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)[11] and (ii) to plead facts with greater specificity, connecting the State-Court Counsel Defendants to the filing of the Proofs of Claim and/or other bankruptcy-specific acts taken before this Court. The Plaintiffs may also amend their Complaint under Section 105, assuming they can tie the conduct of the State-Court Counsel Defendants to a specific bankruptcy provision.

### iii.    22 NYCRR 130-1.1

The Plaintiffs have also cited 22 NYCRR 130-1.1 as a basis to sanction the Defendants under this Court's inherent authority. 22 NYCRR 130-1.1 authorizes courts to sanction parties for frivolous conduct in civil litigation.[12] However, courts in this jurisdiction have found that 22 NYCRR 130-1.1 is "inapplicable to an attorney's conduct in federal court [because] [s]uch conduct is governed by Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927." *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90 Civ. 1476(MJL), 1997 WL 582823, at *1, 5 (S.D.N.Y. Sept. 27, 1997). The Plaintiffs have not cited any authority as to how this Court can invoke its inherent

---

[11] Fed. R. Civ. P. 9(b), which is applied in adversary proceedings pursuant to Fed. R. Bankr. P. 7009, provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." To meet this standard, a party must provide "specific facts regarding the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *In re Moxey*, 522 B.R. 428, 438 (Bankr. E.D.N.Y. 2014) (internal quotations omitted).

[12] This provision provides, in relevant part: " . . . conduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false." 22 NYCRR 130-1.1.

authority to sanction under 22 NYCRR 130-1.1, and case law indicates to the contrary. *See id.* As such, the Plaintiffs have failed to state a claim with respect to the Court invoking an inherent power to sanction under 22 NYCRR 130-1.1.

> C. *28 U.S.C. § 1927*

The Plaintiffs' third cause of action seeks money damages for violations of 28 U.S.C. § 1927. Compl. ¶ 178. Like the other two causes of action, the Plaintiffs allege that the Defendants engaged in deceit and/or collusion in "obtaining and thereafter attempting to collect on a fraudulently obtained Default Judgment." *Id*. ¶ 172

Section 1927 of Title 28 of the United States Code permits courts to award sanctions against an attorney who has acted in bad faith. Specifically, the statute provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

It is well settled in the Second Circuit that a bankruptcy court has the authority to impose sanctions under 28 U.S.C. § 1927.  *See In re Cohoes Indus. Terminal, Inc*., 931 F.2d 222, 230 (2d Cir. 1991). Courts have held that "sanctions under Section 1927 are designed primarily to punish the offending attorney and to deter the repetition of the sanctionable conduct." *In re Khan*, 488 B.R. at 529 (internal quotations omitted). While it is well recognized that a court cannot sanction an attorney under 28 U.S.C. § 1927 for conduct that occurred before other courts, "[t]he background of litigation in other courts . . . is relevant, however, to the question of [the attorney's] . . . lack of good faith, in connection with [the current case]." *Galonsky v. Williams*, No. 96 CIV.

6207(JSM), 1997 WL 759445, at *7 (S.D.N.Y. Dec. 10, 1997); *see In re Galgano*, 358 B.R. 90, 104 (Bankr. S.D.N.Y. 2007).

There is no need to provide a separate analysis for this cause of action with respect to the Defendants. The type of conduct that is sanctionable pursuant to the Court's inherent power to sanction is likewise sanctionable pursuant to 28 U.S.C. § 1927. *In re Green*, 422 B.R. at 474. "[T]here is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith." *In re Khan*, 488 B.R. at 531 (internal quotations omitted); *see Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986) ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power"). Because it has been determined that the Plaintiffs failed to state a claim with respect to the conduct of Defendants Kipiniak and Elston regarding the Court's inherent power to sanction, the Court must reach the same conclusion here, resulting in the dismissal of the 28 USC § 1927 cause of action as to those Defendants.

Further, as to the State-Court Counsel Defendants, while this Court finds that the Plaintiffs currently do not state a claim against them, their conduct may be sanctionable thereunder if the Default Judgment was procured through fraud. As such, the Court will dismiss this cause of action as to the State-Court Counsel Defendants without prejudice to allow the Plaintiffs to amend the Complaint as previously delineated.

## CONCLUSION

The Plaintiffs have failed to state a claim upon which relief can be granted with respect to their Section 487 claim and, accordingly, the Motion to Dismiss is granted with respect to this claim as to all Defendants. The Plaintiffs have failed to state a claim against Kipiniak and Elston

with respect to the second and third causes of action, and those claims are dismissed as to those Defendants. The Plaintiffs have thus far failed to state a claim against Yellen, Yellen & Associates, and Kombol with respect to the second and third causes of action. However, the Court dismisses these claims *without prejudice*, and the Plaintiffs may amend their Complaint (i) to include an independent cause of action for fraud, and (ii) to plead facts with greater specificity that connect the State-Court Counsel Defendants to the filing of the Proofs of Claim and/or other bankruptcy-specific acts taken before this Court.



**Dated: March 31, 2020**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**